IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARTIN WILLS                                                                      PLAINTIFF

v.                                        No. 3:12-cv-03090

CITY OF MOUNTAIN HOME, ARKANSAS; CARRY
MANUEL; ROBERT HARDEN; ROGER MORGAN;
THE STATE OF ARKANSAS; RON KINCADE;
CHRISTOPHER CARTER; MICHAEL KELLY; and
JANET FAYE LACEFIELD                                                          DEFENDANTS

## ORDER

Currently before the Court are the following Motions and various corresponding responses, replies, and briefs in support:

1.    Motion to Dismiss by Separate Defendants Christopher Carter, Ron Kincade, and the State of Arkansas (Doc. 42);

2.    Motion to Dismiss by Separate Defendant Michael Kelly (Doc. 45);

3.    Motion to Dismiss by Separate Defendant Janet Faye Lacefield (Doc. 48);

4.    Motion to Consolidate by Janet Faye Lacefield (Doc. 59);

5.    Motion to Compel by Plaintiff Martin Wills (Doc. 63);

6.    Motion for Judgment on the Pleadings by Separate Defendants Robert Harden, Carry Manuel, Roger Morgan, and City of Mountain Home, Arkansas (Doc. 67);

7.    Emergency Motion for Protective Order and Motion for Sanctions by Martin Wills (Doc. 74);

8.    Motion to Withdraw Motion (4) by Janet Faye Lacefield (Doc. 76);

9.    Motion for Stay of Current Scheduling Order and for New Scheduling Order by

-1-

Martin Wills (Doc. 78);

10.   Motion to Withdraw Motion (7) by Martin Wills (Doc. 84); and

11.   Motion to Quash (Doc. 85) by Martin Wills.

The Court will address each of these motions in turn.

## I.   Background

Taking Plaintiff's factual allegations as true, the background facts relevant to the pending motions are as follows: Plaintiff Martin Wills is engaged in a long-running dispute with Defendant Janet Lacefield.  The dispute has been ongoing since at least 2008 and has resulted in the filing of both civil litigation and criminal charges.  Lacefield filed a complaint of criminal harassment against Wills in 2008, and in August 2009 Wills entered a no-contest plea to that charge.[1]  The terms of the plea were that criminal sentencing was suspended on the condition that Wills did not violate the plea agreement or commit a criminal offense for one year.

As Wills was leaving the building after the plea hearing, he saw Lacefield in her car, with the car running, in the parking lot outside.  Lacefield was in attendance at the hearing, but Wills alleged that she had previously parked two blocks away, and Wills was fearful that she had come into the nearer parking lot only to intimidate him, injure him, or somehow cause him to violate the conditions of his recently-imposed suspended sentence.  Wills does not allege, however, that any injury occurred (other than the fact that he felt anxiety at seeing her, an hour after being present with

---

[1] Wills alleges that he entered a no-contest plea, even though he vigorously denied the charges, because he was informed by his attorney that "the fix was in" on the case.  Regardless of what Wills thought or what his attorney told him, Wills made the decision to enter a no-contest plea, and that plea was accepted by the state court.  Wills could have made the decision to take the charges to trial if he felt he could prove his innocence.  Whether or not Wills's plea was involuntary or whether he received ineffective assistance of counsel is not at issue in this case.

her at the same hearing) or that he was charged with violating the conditions of his suspended sentence as a result of that encounter.  Wills characterizes this event as an assault by Lacefield. Wills submitted a written statement to his attorney documenting the encounter, and his attorney submitted the statement to Defendant Christopher Carter, Deputy Prosecuting Attorney for the 14th Judicial District, but Carter did not file charges against Lacefield.

Soon after Lacefield filed the complaint of criminal harassment against Wills in 2008, Wills filed a complaint of intimidating a witness against Lacefield.  In that complaint, Wills alleged that Lacefield caused another person to make certain threatening telephone calls to Wills.  Wills claims that Defendant Ron Kincade, Fourteenth Judicial District Prosecuting Attorney, failed to file criminal charges against Lacefield based on Wills's complaint.

In early 2010, Lacefield filed for and received a civil order of protection against Wills.  Wills alleges that Lacefield provided false information in order to obtain the protective order.  It appears that at some point Lacefield lodged a complaint with the Mountain Home Police Department saying that Wills had violated the protective order.  Wills claims that there was no violation, that the complaint was false, that the Mountain Home Police Department and Separate Defendants Mountain Home Police Chief Carry Manuel and Officer Robert Harden did not adequately investigate the claim, and that they did not have probable cause to arrest him on the false charges.  Wills also alleges that Separate Defendant Mountain Home Prosecutor Roger Morgan did not timely and adequately provide him with discovery during his prosecution of the case.  Wills states that he was forced to retain an attorney in order to protect his rights, but that his attorney ignored the due process violations that Wills characterizes were occurring as the normal course of business in the Baxter County courts.  Wills further alleges that Harden did not obtain an arrest warrant for Wills to be

arrested until the day of his appeal hearing in his criminal revocation case.  Wills alleges the timing was orchestrated in an attempt to prevent Wills from being present and testifying at his appeal hearing.  Wills was, however, allowed to remain at the appeal hearing before being arrested.  Morgan later moved to "noll pros" the protective order violation charges, and that motion was granted.  Wills alleges that the "noll pros" motion was an attempt to insulate the Mountain Home Police Department from a civil complaint for false arrest.  Wills's attorney refused to appeal the nolle prosequi resolution of the case.

Wills complains that Lacefield was also using his "mail servers" without his permission. Wills filed an criminal complaint through the Mountain Home Police Department's website for theft of services and for the alleged assault in the parking lot after his plea hearing in 2009.  When Wills called the Mountain Home Police Department to follow up on his criminal complaint he alleges he was initially told to quit bothering the police department, but after a short conversation was informed that the officer would look into it.  When Wills called back a couple of days later, he was told by a different officer that his theft of services complaint was barred by the applicable statute of limitations and that Manuel decided not to act on his assault complaint.

In August 2010, Carter filed a petition to revoke Wills's 2009 suspended sentence for violating the terms of his plea agreement.  The petition was filed one day before Wills's suspended sentence was set to expire.  Wills states that he requested discovery from Carter and was provided with such discovery.  Wills asserts that the discovery he was provided did not contain any proof that he had violated his plea agreement and, specifically, did not include compromising photographs he allegedly sent to Lacefield or her attorney, Defendant Michael Kelly.  Wills complains that his civil rights were violated because Carter prosecuted him to revoke his suspended sentence without any

proof of a violation.  A hearing on revocation of the suspended sentence was held in December 2010.

Wills alleges that Kelly gave perjured testimony at the hearing in order to get Wills's suspended

sentence revoked.   The state district court found Wills guilty of violating the terms of his plea

agreement and revoked his suspended sentence.  Wills was fined $750.00, ordered to avoid contact

with Lacefield for one year, and sentenced to 180 days in jail, with the jail sentence suspended.

Wills appealed the revocation, and the circuit court dismissed the revocation petition on appeal.

Wills alleges that Carter's and Kelly's offices are separated by approximately 20 feet and that

Kelly and Carter are long-time friends.

## II.    Motion to Dismiss by Carter, Kincade, and the State of Arkansas

In ruling on a motion to dismiss, the Court accepts as true all of the factual allegations

contained in a complaint and reviews the complaint to determine whether its allegations show that

the pleader is entitled to relief.  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.

2008).   All reasonable inferences from the complaint must be drawn in favor of the non-moving

party.   *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

Complaints should be liberally construed in the plaintiff's favor and "should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his  claim which would entitle him to relief." *Rucci v. City of Pacific*, 327 F.3d 651, 652

(8th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nevertheless, "a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pleadings that contain mere "labels and

conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  "Though pro se complaints are to be

-5-

construed liberally, they must still allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (internal citation omitted).  When asserting a claim "even pro se litigants must set it forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981).

Plaintiff Martin Wills alleges that the State of Arkansas, Prosecutor Kincade, and Deputy Prosecutor Carter (collectively "the State Defendants") violated his civil rights by prosecuting him on criminal charges and seeking to revoke his suspended sentence for violation of his plea agreement in violation of 42 U.S.C. § 1983, by engaging in a conspiracy to violate his civil rights under 42 U.S.C. § 1985 by such prosecution, and by failing to prevent a conspiracy to violate his civil rights under 42 U.S.C. § 1986 through such prosecution.[2]

A prosecutor is absolutely immune from suit for any conduct undertaken in his role as advocate for the state. *Imbler v. Pachtman*, 424 U.S. 409 (1976).  Absolute prosecutorial immunity protects the prosecutor as a key participant in the criminal justice process, such that the prosecutor need not be inhibited from performing his or her functions by a constant fear of retaliation.  *Id*. at 428.

Wills complains that Carter wrongfully prosecuted Wills on the criminal harassment charges alleged by Lacefield 2008, and later wrongfully prosecuted Wills in seeking to revoke the suspended sentence resulting from the criminal harassment charges.  Wills further complains that Carter wrongfully refused to prosecute Lacefield for assault after Wills lodged a complaint.  Wills also contends that the prosecution to revoke his suspended sentence was initiated without a proper basis, one day before his suspended sentence was to be expunged, and that the petition for revocation

---

[2] All state-law claims asserted by Wills are addressed separately, in Section VI, below.

was erroneous.  Wills contends that, despite the revocation petition including an erroneous statement, Carter refused to take the opportunity to amend it.  Wills alleges that the petition for revocation was filed by Carter as a favor to Lacefield and Kelly to extort Wills into settling in a mediation on a separate matter that was set to take place two days later.  Wills alleges that Carter deliberately delayed production of discovery in the revocation case.  As to Kincade, Wills complains that Kincade did not properly train and supervise Carter and, because of a personal prejudice against Wills and in favor of Lacefield, did not exercise his own prosecutorial discretion to file criminal witness intimidation charges against Lacefield based on a complaint by Wills.  Wills alleges that, as the supervising prosecutor, Kincade permitted the creation of a pattern of persistent and widespread practices[3] that had the force of law.

The Court finds that the conduct complained of by Wills—the filing of criminal charges, filing of the petition to revoke, producing requested discovery, and presentation of evidence—is all conduct protected by absolute immunity, as it is all conduct constituting advocacy on the part of the state.  *See, e.g., Schenk v. Chavis*, 461 F.3d 1043 (8th Cir. 2006) (preparing and filing a criminal complaint is conduct protected by absolute immunity as it is conduct constituting advocacy on behalf of the government).  This is true no matter the underlying motive of Carter in prosecuting Wills or the propriety of the actions taken.  *Myers v. Morris*, 810 F.2d. 1437, 1446 (8th Cir. 1987) (finding that allegations that a prosecutor proceeded with a prosecution based on an improper motive did not

---

[3] Wills is not clear in identifying what practices were established, but the Court surmises that Wills perhaps means a practice of discriminating against him personally, of allowing personal prejudices to control prosecutorial discretion, and/or to mishandle criminal investigations and prosecutions.  In any event, Wills points only to isolated events that he alleges happened in his case. The Court cannot find, based on Wills's allegations, any widespread pattern or practice was actually established.

defeat absolute prosecutorial immunity); *Schenk*, 461 F.3d at 1046 ("Actions connected with initiation of prosecution, even if those actions are patently improper are immunized." (internal quotation omitted)).

Wills also complains that Carter called Separate Defendant Michael Kelly as a witness at the revocation hearing so that Kelly could testify about compromising photographs that Wills allegedly sent to Kelly.  Presentation of witness testimony is also conduct protected by absolute immunity, even if, as Wills alleges, the testimony elicited was false.  *Myers*, 810 F.2d at 1446 ("[A]llegations that a prosecutor knowingly offered, used or presented false, misleading or perjured testimony . . . do not defeat absolute prosecutorial immunity, regardless of how reprehensible such conduct would be if it occurred.").

The Court recognizes that purely administrative or investigative actions are not protected by absolute immunity.  *Schenk*, 461 F.3d at 1046.  Wills states that he does not dispute that prosecutors are generally entitled to absolute immunity when carrying out their prosecutorial functions, but that he is alleging that Carter was also deficient in investigating the alleged violations of his plea agreement and in not enlisting the help of any law enforcement agency to investigate.  The determination of whether an action is administrative or investigative in nature is a largely legal determination that is left to the Court.  The Court does not have to take Wills's legal conclusions as established.

Wills argues that he was injured by the actual investigatory actions of Carter, but it is clear that he is actually arguing that he was injured by the resulting prosecution.  At base, Wills is arguing that he never should have been prosecuted, but that Carter made the decision to prosecute him anyway based on a faulty and incomplete investigation.  Regardless of the way Wills spins his

allegations, it is the actual prosecution that resulted from Carter's investigation that he complains of. Decisions made by Carter and/or Kincade not to prosecute Lacefield based on complaints made by Wills and any decision made by Carter not to amend a petition are also protected by absolute immunity. The Court finds that the actions of Carter and Kincade complained of by Wills, giving rise to his alleged § 1983 claims, constitute conduct that is neither purely administrative nor investigative. The Court finds, therefore, that Carter and Kincade are entitled to absolute immunity in this case. Wills's claims against Defendants Carter and Kincade are therefore subject to dismissal as barred by absolute prosecutorial immunity.

Wills claims that the State of Arkansas failed to properly train Carter and conspired with Carter and Kincade. It does not appear that any separate State actor was responsible for supervising the conduct of either Carter or Kincade. Furthermore, Wills's claims against the State of Arkansas are barred by sovereign immunity, which deprives federal courts of jurisdiction over lawsuits brought by private citizens against a state unless the state has waived its immunity or Congress has abrogated the state's immunity through a valid exercise of Congressional power. *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437 (8th Cir. 1996). The State of Arkansas has not consented to suit, and Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. *Id*.

Wills argues that Arkansas has waived its sovereign immunity by allowing for suit where an officer or employee of the State acted with malice or outside the scope of his employment. A.C.A. § 19-10-305(a). The statute cited by Wills provides that an officer of the State is immune from an award of damages if that officer or employee acted without malice and within the scope of his employment. The statute does, as Wills correctly asserts, leave the door open for suit against certain state employees when those employees are acting with malice and/or outside the scope of their

employment.  The statute does not, however, waive the sovereign immunity of the State of Arkansas itself, as it addresses only officers or employees of the State. Simply put, while the State itself retains sovereign immunity, certain state employees may be held individually liable in certain circumstances.  Accordingly, any cognizable claims by Wills against the State of Arkansas are subject to dismissal as barred by sovereign immunity.

Additionally, Wills has failed to state a claim under 42 U.S.C. §§ 1985 or 1986.  Wills has not set forth facts sufficient to show that a meeting of the minds occurred among the alleged co-conspirators.  *Barstad v. Murray Cnty.*, 420 F.3d 880, 887 (8th Cir. 2005) ("A conspiracy claim requires evidence of specific facts that show a 'meeting of minds' among conspirators.").  Instead, Wills essentially complains of independent acts taken by individuals that he asserts, taken together and considering their timing, evince an intent to conspire against him.  Wills alleges that Carter filed the revocation petition against him with just one day left on his suspended sentence before his record would be expunged and just two days prior to a mediation scheduled between Wills and Lacefield (with Kelly as her attorney) on a separate matter.  Wills then alleges that during the nearly two-month mediation, Carter refused to submit any discovery on the revocation petition in response to Wills's requests.  Wills alleges that Lacefield and Kelly used the revocation prosecution as leverage in the mediation to try to get concessions from him, offering that they in turn would request that Carter drop his prosecution of the revocation.  Wills alleges that Carter did not provide discovery until the mediation failed, and that the discovery produced did not include any evidence of the violations alleged in the petition for revocation.  Wills concludes that Carter, Lacefield, and Kelly conspired against him to intimidate and threaten him so as to prevent him from testifying freely in a separate civil matter Wills had filed against Lacefield in U.S. District Court in Tennessee, because

-10-

Kelly requested that Wills drop his federal suit at some point during the mediation. Wills alleges that, in furtherance of that conspiracy, Kelly deliberately perjured his testimony at the revocation hearing to bolster Carter's baseless revocation petition.

The Court cannot find that such assertions are sufficient to state a claim under 42 U.S.C. § 1985. The facts alleged by Wills are insufficient to evince a meeting of the minds between Carter, Lacefield, and Kelly to conspire against Wills within the context of § 1985. The fact that his criminal revocation proceeding occurred near in time to his mediation does not establish a meeting of the minds. The Court cannot assume that, regardless of the timing of Wills's alleged violation, Carter chose to wait until the last possible day to file a revocation petition solely to make the revocation proceeding correspond with Wills's mediation with Lacefield. The fact of the matter is that Wills's suspended sentence was for one year. Any violation would have to have occurred within that fairly narrow, one-year timeframe in order for it to have been actionable. Wills allegedly violated the conditions of his suspended sentence, and Carter prosecuted the alleged violation within the timeframe allowed. The timing of the filing of the petition is far more likely to be correlated to the fact that the deadline for filing a petition for revocation was impending than the fact that Wills had a mediation scheduled with Lacefield.

Once the prosecution was initiated, it appears that discovery was not produced for some time. Again, the Court cannot assume that Carter deliberately delayed discovery production solely to correspond with the timing of the separate mediation between Wills and Lacefield. Wills was represented by an attorney during the revocation proceeding, and if there were a discovery issue during the state court proceeding, Wills could have filed a motion to compel if discovery was improperly delayed or refused. Wills does not make any factual assertions that Carter's two-month

delay in producing the requested discovery was in contravention of a state court order or in violation of any state court procedural rule.

Finally, it does not seem to evince a conspiracy that the matter of litigation pending between Wills and Lacefield came up at a mediation between Wills and Lacefield.  Any offers or requests regarding pending litigations that arose during the course of the mediation cannot be assumed to have been made in an effort to threaten or extort Wills as opposed to having been made in an effort to achieve a global resolution of the issues pending between Wills and Lacefield.  Even were Lacefield and/or Kelly to offer to ask Carter not to proceed with the revocation prosecution, the ultimate decision of whether to proceed with the prosecution would have been Carter's.

Wills's claims brought pursuant to 42 U.S.C. § 1985 are, therefore, subject to dismissal.  As a result, Wills's claims brought pursuant to 42 U.S.C. § 1986 are also subject to dismissal, as "[a] section 1986 claim must be predicated upon a valid section 1985 claim."  *Gatlin v. Green*, 362 F.3d 1089, 1095 (8th Cir. 2004).

## III.    Motion to Dismiss by Kelly

Wills brings various state law claims against Defendant Michael Kelly, as well as claims under 42 U.S.C. §§ 1983, 1985, and 1986.

Michael Kelly is a private attorney.  Kelly is not a state actor and was not acting under color of state law.  Wills, therefore, fails to state a claim against Kelly under 42 U.S.C. § 1983.  *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").  Wills asserts that Kelly acted under the direction of and in concert with a state actor, Carter, and was thereby converted into

-12-

a state actor.  Under certain circumstances a private person may become a state actor when he willfully engages in joint action with the state or its agents. *Adickes v. SH Kress & Co.*, 398 U.S. 144, 152 (1970); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001).  Those circumstances do not exist in this case.

The petition for revocation filed in state court by Carter states that "the defendant [Wills] sent photos to attorney Michael E. Kelly that the defendant contends is the defendant and another man in a compromising position, the photos have nothing to do with an [sic] litigation and are not protected nor were they requested in discovery by Mr. Kelly."  (Doc. 51, p. 21).  Obviously, the petition was not a model of perfect spelling or grammatical correctness.  Mr. Wills, however, takes particular issue with the fact that the petition asserts that Wills sent photos of "the defendant," which would have been Wills, and another man in a compromising position, even though Kelly later "changed his allegation in sworn testimony" to allege that Wills actually sent him pictures of Lacefield and another man in a compromising position.  The fact that the petition says "defendant" instead of properly identifying Lacefield is not of the import that Wills attributes to it.  Rather, the imposition of "defendant" appears to be simply one of a number of scriveners errors in the petition. The Court cannot assume that Kelly deliberately lied to Carter to get him to say that the pictures were of Wills only to later change his testimony and commit perjury.  The more likely explanation is that a mistake was made in drafting the petition.  Wills alleges that he sent information to Kelly in connection with an unrelated civil case, and that he should not be denied access to the courts by being subject to prosecution for producing information related to a pending action.  The petition itself, however, states that the pictures had nothing to do with any pending litigation.

Wills also alleges that Kelly perjured himself regarding the fact that the state court reporter,

-13-

Linda Adams, reportedly told Kelly that Wills called Lacefield a "whore." Wills states that Ms. Adams denies ever making such a statement to Kelly and was prepared to testify to that effect. Wills posits that the only reasonable explanation for Kelly to deliberately perjure his testimony was to assist Defendant Carter in his revocation prosecution. Assuming for the sake of argument that Kelly did give false testimony, there are any number of explanations as to why he might have done so. Perhaps he misheard or misconstrued something said by Ms. Adams. Perhaps he had heard some remark made, but was mistaken as to who said it. Perhaps he, personally, simply wanted to see Wills's suspended sentence revoked. In any event, a joint conspiracy between Kelly and Carter is far from being the only reasonable explanation for Kelly's testimony, and in fact is not the most likely explanation for Kelly's testimony. The Court will not assume that a conspiracy existed based only on conjecture or hypothesis without a basis in fact. Wills even submits that Kelly's testimony regarding Ms. Adams's statement was made spontaneously, without prompting by Carter and not in response to any question asked by Carter.

Whether the allegations of the revocation petition could be borne out was for the state court to determine. For purposes of the instant matter, the Court cannot find that, by simply making a complaint for revocation, Kelly acted in concert with Carter. "[A] private party's mere invocation of state legal procedures does not constitute state action." *Youngblood*, 266 F.3d at 855. Kelly and Carter would obviously have to work together to a certain extent during the prosecution since Kelly possessed information relevant to the prosecution. And, the fact that the timing of the revocation prosecution coincided with the timing of the separate mediation in which Kelly represented Lacefield is not enough to establish joint action among Kelly and Carter.

For the reasons already stated in Section II above, Wills fails to state a claim under 42 U.S.C.

-14-

§§ 1985 and 1986, and those claims against Kelly are likewise subject to dismissal.

To the extent Wills tries to seek relief against Kelly based on violations of the Arkansas or Tennessee Rules of Professional Conduct, he fails to state a claim.  *Allen v. Allison*, 356 Ark. 403 (2004) (no cause of action should arise from a violation of the Arkansas Model Rules of Professional Conduct); *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 405 (Tenn. 1991) (the Code of Professional Responsibility is not designed to create a private cause of action for infractions of disciplinary rules).

## IV.    Motion to Dismiss by Lacefield

Wills brings various state law claims as well as claims under 42 U.S.C. §§ 1983, 1985, and 1986 against Defendant Lacefield.  Lacefield, like Kelly, is a private actor.  Wills alleges that Lacefield acted in concert with Carter by retaining experts to further Wills's prosecution; failing to provide exculpatory evidence that would have shown that the e-mail issue raised in the petition for revocation was occurring long before the plea agreement was made in the criminal harassment case;[4] and forging e-mails in order to prove her "baseless allegations" in the petition for revocation.

The Court concludes, that, like Kelly, Lacefield was not cloaked in state authority such that she can be considered a state actor.  None of the actions Lacefield is alleged to have taken can be considered state actions or actions that would otherwise be sufficient to convert her into a state actor.  None of the above actions cited by Wills show that Lacefield was acting in concert with Carter.  Rather, Wills alleges that Lacefield took independent actions in alleging that Wills violated the conditions of his suspended sentence.  Carter then made the independent decision to prosecute the

---

[4] The Court notes that the fact that Wills was sending e-mails to Lacefield before the plea agreement was made does not excuse a violation of his suspended sentence if he continued to send e-mails that violated the conditions of that sentence after the plea agreement was signed.

revocation.  Again, there would necessarily be some cooperation between Carter and Lacefield in the course of the prosecution.  That cooperation in the course of a criminal prosecution is not sufficient to make Lacefield a state actor.  Wills's allegation that Lacefield failed to provide complete truthful information to the Mountain Home Police Department in causing them to issue a warrant for his arrest likewise is insufficient to give rise to a § 1983 claim against Lacefield. Therefore, Wills's § 1983 claims against Lacefield are subject to dismissal.

For the reasons already stated above, Wills's § 1985 and § 1986 claims are also subject to dismissal.

## V.     Motion for Judgment on the Pleadings by Harden, Manuel, Morgan, and City of Mountain Home, Arkansas (the "City Defendants")

The Motion by the City Defendants addresses the following claims made by Wills in his Amended Complaint: a 42 U.S.C. § 1983 claim against the City of Mountain Home for violating his Fourth, Fifth, and Fourteenth Amendment rights for failing to properly train Separate Defendants Mountain Home Police Officer Robert Harden and other officers, Carter, and City of Mountain Home Prosecutor Roger Morgan; claims against the City of Mountain Home pursuant to 42 U.S.C. § 1985 and 1986;  claims that Separate Defendant Mountain Home Chief of Police Carry Manuel violated his Fourth, Fifth, and Fourteenth Amendment rights by failing to properly train Harden; claims that Morgan violated his Fourth, Fifth, and Fourteenth Amendment rights by failing to properly train deputy prosecutors, including Carter; and § 1985 claims against Morgan and Harden. Similarly to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a motion for judgment on the pleadings should be granted if there is no material issue of fact to be resolved and the moving party is entitled to judgment as a matter of law.  *Buddy Bean Lumber Co. v. Axis Surplus*

-16-

*Ins. Co.*, 2013 U.S. App. LEXIS 10391 at *4 (8th Cir. May 23, 2013); *see also Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (reviewing motion for judgment on the pleadings using the same standards as motion to dismiss under Rule 12(b)(6)).

Wills claims that defendants Harden, Morgan, and perhaps the City of Mountain Home conspired against him in violation of 42 U.S.C. § 1985. Wills does not allege sufficient facts to state a claim for a § 1985 conspiracy involving Harden, Morgan, and the City of Mountain Home. Wills essentially alleges that Harden and Morgan conspired to arrest and prosecute him for a violation of an order of protection knowing that there was no evidence of any violation. Wills alleges that Morgan and/or Harden also withheld exculpatory evidence. Wills does not allege facts showing that there was any meeting of the minds to conspire against him. Rather, he complains of individual actions taken by Harden and Morgan. The fact that both Harden and Morgan were involved in the investigation and then the prosecution, respectively, of the violation charge is not evidence of a conspiracy. Wills's § 1985 and § 1986 claims against Harden, Morgan, and the City of Mountain Home are, therefore, subject to dismissal.

Wills's claims against Morgan are subject to dismissal as barred by prosecutorial immunity. Wills again claims that he was injured by Morgan's inadequate investigation, but at base, Wills is actually complaining that he was injured by the decision to prosecute and the prosecution resulting from that investigation. Wills does not point to any purely administrative or investigatory action by Morgan that would give rise to an actionable claim. As the claims against Morgan are subject to dismissal, any claim that Morgan was not properly trained or supervised is also subject to dismissal.

It does not appear that Carter is employed by the City of Mountain Home or that he is supervised by Morgan, so Wills's claims that Morgan or the City of Mountain Home failed to

-17-

properly train Carter must be dismissed. Wills does not identify any other deputy prosecutor that Morgan or the City of Mountain Home failed to properly train or supervise.

The City Defendants did not address certain claims made by Wills in his original complaint and incorporated by reference into his amended complaint. Wills brings § 1983 claims against the City of Mountain Home, Manuel, and Harden. Those claims will remain pending. Wills's claims that the City of Mountain Home failed to properly train Harden and that Manuel failed to properly train Harden will also remain, as the asserted basis for dismissal was that Harden should be dismissed as a defendant. The Court cannot dismiss Harden as a defendant without first addressing Wills's § 1983 claims against him.

## VI.    State Law Claims

Wills pleads that diversity jurisdiction exists and pleads the following claims under state law: malicious prosecution by Carter, Kelly, and Lacefield; malicious prosecution by Morgan, Carter, Manuel, and Harden; malicious prosecution by Lacefield individually; intentional infliction of emotional distress by Carter, Kelly, and Lacefield; intentional infliction of emotional distress by Morgan, Carter, Manuel, and Harden; and false arrest by Harden, Manuel, and Morgan. Because Defendants have not adequately addressed if or why these claims should be dismissed on the merits, nor argued that diversity jurisdiction does not exist in this case, these claims will remain pending.

The Court has already found that Carter, Kincade, and Morgan are entitled to absolute immunity. Wills has alleged no actions by Carter, Kincade, or Morgan, other than those already considered by the Court in making its absolute immunity determination, that separately give rise to his state law claims. Therefore, any state law claims by Wills against Carter, Kincade, or Morgan for malicious prosecution, intentional infliction of emotional distress, or false arrest must also be

dismissed.

The remaining state law claims will remain pending.

## VII.   Remaining Motions

Lacefield has moved to withdraw her pending motion to consolidate cases and cancel the Rule 26(f) conference. The motion to withdraw (Doc. 76) will be granted and the original motion to consolidate (Doc. 59) withdrawn.

Wills's motion to compel discovery responses by Morgan (Doc. 63) will be denied as moot in light of the fact that the Court has found that all claims against Morgan are subject to dismissal.

Wills's motion to compel discovery by Harden (Doc. 65) will be denied without prejudice to Wills's ability to file a future motion to compel that more clearly delineates the information he is seeking be compelled. At this time, it appears that Wills has an issue with the fact that Harden has, in fact, produced a copy of the police file that Wills alleges was produced in violation of a court order that Wills's case file be sealed. It is not for this Court to decide, in this case, if Harden did or did not violate another court's order, although it does not appear to this Court that he did. A case file is different than a police file. An order sealing a case file does not necessarily also seal a corresponding police file such that the police would not be able to produce the file in discovery to the very person who was at issue in the case and in the investigation. If Wills chooses to file a future motion to compel, the motion should focus solely on information he seeks to compel from the defendant or defendants that has not been provided to him previously.

Wills has moved to withdraw his emergency motion for protective order and motion for sanctions. The motion to withdraw (Doc. 84) will be granted and the original motion (Doc. 74) will be withdrawn.

Wills has filed a motion for a stay of the current scheduling order and a motion to issue a new scheduling order (Doc. 78). The Court construes this motion as a request for an extension of the deadlines contained in the original scheduling order. Defendants Kelly and Lacefield have objected to Wills's request. The Court finds, however, that because the Court has only now resolved the pending motions in this case, the parties should not be foreclosed from completing discovery in line with the Court's rulings contained in this Order. The Court does not, however, wish to delay this matter any longer than necessary. For that reason, the Court will issue an amended final scheduling order continuing the trial of this matter for one month and resetting the pending deadlines in accordance with the new trial date.

Wills's Motion to Quash Lacefield's subpoena to depose Wills's wife will be denied, as the Court finds that the deposition of Wills's wife is reasonably calculated to lead to the discovery of relevant evidence, including but not limited to evidence regarding any damages allegedly suffered by Wills as a result of Defendants' actions. The Court agrees with defense counsel that spousal privilege would not generally apply in regard to Wills's state law claims. But in any event, the potential right to assert a privilege to certain inquiries at a deposition does not warrant quashing the deposition entirely.

## VIII.   Conclusion

For the reasons set forth above, it is ORDERED as follows:

- The Motion to Dismiss (Doc. 42) by Carter, Kincade, and the State of Arkansas is GRANTED; all claims against Carter, Kincade, and the State of Arkansas are DISMISSED WITH PREJUDICE; and Separate Defendants The State of Arkansas, Ron Kincade, and Christopher Carter are dismissed as defendants to this lawsuit;

• The Motion to Dismiss (Doc. 45) by Kelly is GRANTED, and Wills's federal claims against Separate Defendant Michael Kelly are DISMISSED WITH PREJUDICE; Wills's state-law claims against Kelly remain for adjudication;

• The Motion to Dismiss (Doc. 48) by Lacefield is GRANTED, and Wills's federal claims against Separate Defendant Janet Faye Lacefield are DISMISSED WITH PREJUDICE; Wills's state-law claims against Lacefield remain for adjudication;

• Lacefield's Motion to Withdraw Motion to Consolidate Cases (Doc. 76) is GRANTED, and her Motion to Consolidate Cases (Doc. 59) is TERMINATED AS WITHDRAWN;

• Wills's Motion to Compel as to Morgan (Doc. 63) is DENIED AS MOOT;

• Wills's Motion to Compel as to Harden (Doc. 65) is DENIED WITHOUT PREJUDICE;

• The Motion for Judgment on the Pleadings by Harden, Manuel, Morgan, and the City of Mountain Home Arkansas is GRANTED IN PART and DENIED IN PART in accordance with the findings set forth in Section V, above; as a result, all claims against Separate Defendant Roger Morgan are DISMISSED WITH PREJUDICE, and Morgan is dismissed as a Defendant in this case; Wills's claims under 42 U.S.C. §§ 1985 and 1986 against Harden, Manuel, Morgan, and the City of Mountain Home are DISMISSED WITH PREJUDICE; Wills's claims that the City of Mountain Home failed to properly train or supervise Defendants Carter or Morgan are likewise DISMISSED WITH PREJUDICE; the following claims remain for adjudication: Wills's 42 U.S.C. § 1983 claims against City of Mountain Home, Harden, and

Manuel, as well as state law claims against Manuel and Harden;

• Wills's Motion to Withdraw (Doc. 84) Motion for Protective Order and Motion for Sanctions is GRANTED, and Wills's Motion for Protective Order and Motion for Sanctions (Doc. 74) is TERMINATED AS WITHDRAWN;

• Wills's Motion to Issue a New Scheduling Order is GRANTED; trial of this matter will be continued for one month with all relevant deadlines reset accordingly; trial will be reset by separate order; and

• Wills's Motion to Quash (Doc. 85) is DENIED.

**IT IS SO ORDERED** this 12th day of June, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE